UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RONALD REISKE,                          :
         Plaintiff,                     :
                                        :
    v.                                  : CASE NO. 13cv1089(JBA)
                                        :
REV. ANTHONY BRUNO,                     :
         Defendant.                     :


RULING ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION [Doc. # 3]

    The plaintiff seeks an order requiring the defendant to
provide him religious items to practice his Wicca religion.

    Interim injunctive relief "is an extraordinary and drastic
remedy, one that should not be granted unless the movant, by a
clear showing, carries the burden of persuasion." Grand River
Enterprise Six Nations Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir.
2007) (citation omitted).  Preliminary injunctive relief is
designed to preserve the status quo until the court has an
opportunity to rule on the lawsuit's merits.  See McCormack v.
Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012).

    To obtain preliminary injunctive relief, the moving party
must establish "(a) irreparable harm and (b) either (1)
likelihood of success on the merits or (2) sufficiently serious
questions going to the merits to make them a fair ground for
litigation and a balance of hardships tipping decidedly toward
the party requesting the preliminary relief." Citigroup Global
Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598

F.3d 30, 35 (2d Cir. 2010) (internal quotation marks and citation omitted). Although a showing that the plaintiff will suffer irreparable injury before a decision on the merits of the claim can be reached is insufficient, standing alone, to warrant preliminary injunctive relief, it is the most significant condition that must be demonstrated. See Daniels v. Murphy, No. 3:11cv286 (SRU), 2012 WL 5463072 (D. Conn. Nov. 8, 2012).

If a party seeks a mandatory injunction, i.e., an injunction that alters the status quo by commanding the defendant to perform a positive act, he must meet a higher standard. He must demonstrate "a 'substantial' likelihood of success on the merits." New York Progress and Protection PAC v. Walsh, 733 F.3d 483, 486 (2d Cir. 2013). Questionable claims would not meet the likelihood of success requirement. See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308, 340 (1999). Here, the plaintiff seeks to change the status quo by requiring the Department of Correction to recognize the Wicca religion and authorize his purchase of religious items. Thus, he must meet this higher standard.

Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See Kern v. Clark, 331 F.3d 9, 12 (2d Cir. 2003). Where, as here, "the record before a district court permits it to conclude that there is no factual

dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal Practice ¶ 65.04[3] (2d ed. 1995). Upon review of the record, the court determines that oral testimony and argument are not necessary in this case. Thus, the plaintiff's motion [Doc. # 17] for evidentiary hearing is denied.

The plaintiff states that he is a Second Degree Priest of the Wicca religion and has been a practicing Wiccan for twenty years. He must worship between the hours of 9:00 p.m. and 10:00 p.m. or midnight to dawn and there are eight mandatory annual rituals which must be performed or specified dates. The plaintiff claims that he requires the following items to practice his religion: an unhooded robe with colored strings, a wand, oils, four candles, two altar candles, a fourteen foot length of rope, six candle holders, a 3 x 2 pile of wood, a black altar cloth, a God or Goddess statue or symbolic representation, four element bowls, incense, a silver bell, a candle snuffer, a metal bowl to contain spiritual fluid, a chalice, a pentacle and a summoning horn. The plaintiff argues that he will suffer irreparable harm if these items are not provided immediately.

The defendant argues that the plaintiff's allegation of irreparable harm is premature because he failed to properly request the items and failed to exhaust his administrative

3

remedies before commencing this action.  In response, the plaintiff states that he complied with all requests for additional information on the items but received no response from the defendant.  Contrary to the defendant's representation, the plaintiff contends that he did properly utilize the grievance procedure.  In light of the contrary representations, the court declines to decide this motion based on the claim that the plaintiff failed to exhaust his institutional remedies.

The defendant also contends that the request for preliminary injunctive relief is precluded by the statutory requirements set forth at 18 U.S.C. § 3626(a)(2):

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety . . . caused by the preliminary relief.

The defendant argues that many of the items constitute a threat to institutional safety.  For example, the rope, wood, metal bowls, candle snuffer and candle holders could be used as weapons and the candles and incense pose a fire threat.  The defendant contends that the adverse impact on public and institutional safety demonstrates that the plaintiff cannot demonstrate a likelihood of success on the merits of his claim to warrant preliminary injunctive relief.

Although inmates have a First Amendment right to practice their religion, this right is not unlimited.  The Department of Correction may impose restrictions on the free exercise of religion that relate to legitimate penological concerns.  See Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir.), cert. denied, 498 U.S. 951 (1990).  If the regulation that burdens an inmate's constitutional right is reasonably related to a legitimate penological purpose, the regulation will be found constitutional. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).  In evaluating the reasonableness of such restrictions, the court considers four factors:  (1) whether there is a rational relationship between the regulation and the legitimate governmental interest asserted by correctional officials, (2) whether the inmate has an alternate means of exercising his constitutional right, (3) the impact that accommodating the right would have on the prison system, and (4) whether ready alternative exist to accommodate the prisoner's right and satisfy institutional concerns.  Turner v. Safley, 482 U.S. 78, 89-90 (1987).  The court applies this same standard when considering a decision to deny one inmate the ability to engage in religious practices.  See Salahuddin v. Goord, 467 F.3d 263, 274 n.4 (2d Cir. 2006) (citations omitted).

The defendant has submitted the affidavit of Deputy Warden Mulligan indicating that many of the requested items pose a

security threat.  Oils from outside vendors are flammable, their
strong odor can prevent the detection of other prohibited
substances and they can be used for barter which is prohibited.
Wood, rope and metal objects may be used as weapons or to
facilitate escape.  Candles and incense pose a fire threat.
Colored strings on a robe could designate gang affiliation and a
robe different from the robe sold in the commissary could be used
conceal an inmate's identity when committing institutional
offenses or to facilitate escape.  (See Mulligan Aff. [Doc. # 16-
7] ¶¶ 11-16.)  Other courts considering similar claims agree with
this assessment.  See, e.g., Rouser v. White, 630 F. Supp. 2d
1165, 1190 (E.D. Cal. 2009) (holding that denying inmate access
to candles and incense appears rationally related to a safety
interest, namely fire concerns, within the analysis set forth in
Turner v. Safley); Pugh v. Caruso, No. 1:06-cv-138, 2010 WL
3810081, at *8 (W.D. Mich. Aug. 25, 2010) (upholding for safety
and security reasons correctional property restrictions
precluding Wiccan inmate from possessing oils, ceremonial robe,
bell, candles and incense), report and recommendation adopted by
2010 WL 3810068 (W.D. Mich. Sept. 22, 2010); Willard v. Hobbs,
No. 2:08CV24, 2009 WL 2497637, at *10 (E.D. Ark. Aug. 12, 2009)
(denial of altar cloth, oils, salt and non-conforming bell, not
substantial burden on Wiccan's exercise of religion and their
denial comports with analysis in Turner).  The defendant also

points to the plaintiff's disciplinary history, including charge for fighting and disobeying orders (see Mulligan Aff. ¶ 10), to support his contention that providing such an inmate with items that can be used as weapons endangers the safety and security of the institution, correctional staff and other inmates.

Regarding the second Turner factor, whether the inmate has alternative means of exercising his constitutional right, the defendant notes that substitutes for many of the requested items are available.  Alternative cups and bowls, approved oils and a white bathrobe may be purchased in the commissary.  The plaintiff may use a pencil in place of a wand.  (See Bruno Aff. [Doc. # 16-5] ¶¶ 10-11, 19, 22-23, 28-29.)  In addition, the plaintiff has presented no evidence suggesting that use of the requested items is mandatory.  To the contrary, in another case within this circuit, the court obtained information from a Wiccan priestess stating that incense, a chalice, candles, a pentacle, statuary, oils and a robe, while nice to have, were not essential to the Wiccan religion.  See Miller v. Fisher, No. 9:07-cv-942, 2009 WL 7760224, at *8 (N.D.N.Y. Sept. 22, 2009).  The plaintiff does not address the necessity of the items or the possibility of accommodations or substitutions.

Regarding the third Turner factor, the defendant contends that accommodation of the plaintiff's request would impose a heavy burden on correctional staff.  In addition to the safety

threats enumerated above, possession of these items would require increased vigilance to prevent the theft and improper use of the items by other inmates.  This would endanger the plaintiff as well as other inmates against whom the items could be used as weapons.  In addition, granting special treatment to the plaintiff would result in requests from many other inmates for special items.  (See Bruno Aff. ¶¶ 25, 27-28; Mulligan Aff. ¶¶ 18-20.)

The plaintiff's invocation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1(a), does not bolster his claim for preliminary injunctive relief.  RLUIPA was not intended to elevate accommodation of an inmate's religious practices over the institution's need to maintain safety and security.  See Cutter v. Wilkinson, 544 U.S. 709, 722 (2005); see also, Hodgson v. Fabian, 378 F. App'x 592, 593 (8th Cir. 2010) (per curiam) (refusal to allow Wiccan to keep prayer oils in his cell not a substantial burden under RLUIPA).

In light of the representations that many of the items pose a safety threat and the cases from other districts rejecting the right of Wiccans to possess most of the items that plaintiff requests based on institutional safety concerns, the court concludes that the plaintiff has not demonstrated a likelihood of success on the merits to warrant an award of preliminary injunctive relief.

Plaintiff's motions for temporary restraining order and preliminary injunction [**Doc. # 3**] and for evidentiary hearing [**Doc. # 17**] are **DENIED.**

As set forth in Initial Review Order [Doc. # 6] all discovery will close March 12, 2014 and any motions for summary judgment shall be filed by April 11, 2014.

It is so ordered.

____/s/_____
Janet Bond Arterton
United States District Judge

Dated at New Haven, Connecticut: February 6, 2014.