UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RONALD REISKE, Plaintiff, | : | |
| v. | : | Case No. 3:13-cv-1089 (JBA) |
| REV. ANTHONY BRUNO, Defendant. | : | |

RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. #29]

Plaintiff, incarcerated and pro se, has filed a complaint under 42 U.S.C. § 1983 against Defendant Reverend Anthony Bruno. Plaintiff contends that Reverend Bruno violated his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act("RLUIPA"), 42 U.S.C. § 2000cc, et seq., by denying him various items required to practice his religion. He also asserts a federal claim for denial of equal protection of the laws and several state law claims. Reverend Bruno moves for summary judgment. For the reasons that follow, the motion for summary judgment is granted.

I. Facts[1]

Plaintiff is a sentenced inmate confined at the Enfield Correctional Institution. His disciplinary record includes charges for fighting, gang affiliation, security tampering, flagrant disobedience and possession of contraband.

The Department of Correction ("DOC") affords administrative remedies for prisoners to address issues related to their confinement. Inmates are informed of the procedures at inmate orientation. They attend an orientation session when they enter DOC custody and every time they transfer to a different correctional facility. Upon admission to DOC custody, inmates receive a written summary of Administrative Directive 9.6, which sets forth the administrative remedy procedures. The procedures are also set forth in the facility-specific handbook an inmate receives each time he is transferred to a different correctional facility.

---

[1] The facts are taken from the defendant's Local Rule 56(a) Statement and the exhibits filed in support of the motion for summary judgment. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicates whether the opposing party admits or denies the facts set forth by the moving party. Each admission or denial must include a citation to an affidavit or other admissible evidence. In addition, the opposing party must submit a list of disputed factual issues. See D. Conn. L. Civ. R. 56(a)2 & 56(a)3.

Despite receiving specific notice from the defendant regarding his obligation to respond to the motion for summary judgment and the contents of a proper response [Doc. #29-2] as well as an extension of time to submit his response, [Doc. #33] Plaintiff has not opposed the motion. Accordingly, Defendant's facts are deemed admitted. See D. Conn. L. Civ. R. 56(a)1 (providing that all material facts set forth in the Local Rule 56(a)1 Statement "will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party").

The administrative remedy procedure requires the prisoner to first seek informal resolution of the complaint in writing by using an Inmate Request Form. If informal resolution fails to resolve the issue, the inmate is required to file a grievance and attach the Inmate Request Form and response. The grievance must be filed within thirty days from the cause of the grievance. The Unit Administrator responds to the grievance within thirty days of filing. If the inmate is dissatisfied with the response, he may appeal to the second level of review. Any appeal must be filed within five days from receipt of the grievance decision.

Plaintiff has been transferred at least twenty-five times during his various periods of incarceration. Thus, he has received at least twenty-five inmate handbooks and understands how to properly file a grievance. Between March 1, 2013 and July 11, 2013, DOC records show that Plaintiff filed only one grievance relating to obtaining religious items. In that grievance, Plaintiff sought permission to purchase a double-stranded cord and religious oils.

Inmates seeking to purchase religious articles not available through the commissary must obtain written permission from the Director of Programs and Treatment or his designee. Reverend Bruno, the Director of Religious Services for the DOC, has been designated to perform this task. Each request for a religious article is individually reviewed to determine whether the article impacts

institutional safety and security. If it does, Reverend Bruno determines whether an accommodation can be made. Reverend Bruno attempts to provide fair, firm and consistent policies and procedures for all inmates regardless of their religious affiliation or the facility in which they are incarcerated.

Plaintiff has designated his religion as Wicca. He alleges that he wrote to Reverend Bruno to obtain permission to purchase the following items: fourteen feet of rope, 3 x 2 pile of wood, oils, incense, an un-hooded robe with colored drawstrings, wands, candles, candle holders, a candle snuffer, an altar cloth, a God or Goddess statue or symbolic representation, element bowls, a metal bowl, a silver bell, a pentacle and a summoning horn. Reverend Bruno and Deputy Warden Mulligan state in their declarations, however, that Plaintiff only requested to purchase oils, a pentacle and a double-stranded pendant cord. Reverend Bruno has researched the Wicca religion and can find no provisions requiring use of rope, a pile of wood, a silver bell, a summoning horn, oils, incense, an un-hooded robe with colored drawstrings, candles, candle holders or a candle snuffer.

On March 13, 2013, Plaintiff wrote to Reverend Bruno and asked permission to purchase a black and white pentagram pendant, a black double-stranded pendant cord and lavender and strawberry oils. Reverend Bruno denied his request in part, stating that cords were

not allowed, but that Plaintiff could purchase a ball-bar chain sold in the commissary for use with all religious medals. Reverend Bruno did not approve or deny the request for a pentagram pendant. Instead, he told Plaintiff that the request would be considered if Plaintiff provided sufficient additional information about the pendant.

Historically, oils have been problematic in correctional facilities. Inmates have used oils to interfere with the odor-detecting abilities of canines, used them as a form of currency or barter, and combined them with other substances to create combustible materials. Regarding the requested oils, Reverend Bruno informed Plaintiff that the DOC allows inmates to purchase approved oils for religious purposes and that those approved oils are available in the commissary. The approved oils are non-flammable and free of alcohol or any animal products, and have been deemed compatible with safety and security concerns. As the oils from the commissary are not restricted to use by any particular religious denomination, they are an adequate alternative for Plaintiff to use to exercise his Wicca beliefs.

On April 15, 2013, Plaintiff wrote a second letter to Reverend Bruno. He sought permission to purchase a white and black bone carved pentacle and a double-stranded pendant cord. In his April 26, 2013 response, Reverend Bruno told Plaintiff that inmates are

permitted to submit requests to purchase religious items that are not available through the commissary. Reverend Bruno stated that he could not give Plaintiff permission to purchase a pendant cord because he could purchase a religious chain from the commissary. Reverend Bruno stated that he was unable to find the pentacle with the catalog and page number provided by Plaintiff and asked Plaintiff to send him a picture of the item from the catalog to enable Reverend Bruno to evaluate the item. Plaintiff did not respond to the request for additional information.

The DOC does not maintain a list of approved religious articles for any religion. Each request for a religious item is made individually. Even if he had submitted a written request, the wood and rope would have been denied. These items can be used to assault other inmates or staff, or to escape from the correctional facility. No religious group would be permitted to have these items. Candles, incense and related items, such as a candle snuffer and candle holders, are not permitted in correctional facilities because open-flames are a safety and security risk. Candles could be used to start fires or used to create torches to use as a weapon. In addition, candle holders and candle snuffers could be used as weapons. Incense can be used to mask to odor of other illegal contraband and inhibit the odor-detecting abilities of canines.

In July 2013, other Wiccan inmates requested, inter alia, an

altar cloth, chalice, bowl, wand, pentacle and candles. The altar cloth was preliminarily approved. Commissary cups and bowls were found to be sufficient accommodation for the chalice and bowl, and a pencil was a sufficient accommodation for the wand. The request for a pentacle was denied, but the inmates were informed that they could request to purchase individual pentacles that could be worn around their necks with a chain purchased from the commissary. The request for candles was denied because open flames are an obvious safety and security issue.

Plaintiff has available alternatives to practice his religion. He can request individual professional clergy visits, obtain religious reading material or recordings, tarot cards and a personal pentacle with a commissary chain.

II. Standard of Review

A motion for summary judgment may be granted only where there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law. See Fed. R. Civ. P.56(a); In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009). The moving party may satisfy his burden "by showing—that is pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam) (internal quotation marks and citations omitted). Once the moving party meets this burden,

the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). He must present such evidence as would allow a jury to find in his favor in order to defeat the motion for summary judgment. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Merely verifying the allegations of the complaint in an affidavit, however, is insufficient to oppose a motion for summary judgment. Zigmund v. Foster, 106 F. Supp. 2d 352, 256 (D. Conn. 2000) (citing cases).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is sought. Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009). If there is any evidence in the record on a material issue from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is inappropriate. Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004). However, the existence of a mere "scintilla" of evidence supporting the plaintiff's position is insufficient to defeat a motion for summary judgment. Harvey v. Homebound Mortgage, Inc., 547 F.3d 158, 163 (2d Cir. 2008).

## III. Discussion

Reverend Bruno contends that Plaintiff failed to exhaust his

administrative remedies for all claims except the request for religious oils. In addition, he argues that summary judgment should enter because his actions were reasonably related to a legitimate penological purpose. Finally, Reverend Bruno argues that he is protected by qualified immunity.

A. Exhaustion of Administrative Remedies

Reverend Bruno first argues that because Plaintiff has exhausted his administrative remedies only with respect to his claim for purchase of religious oils, summary judgment should enter in his favor on all other claims for failure to exhaust administrative remedies. An examination of the attached grievance shows that Plaintiff also referenced the double-stranded pendant cord in the grievance. See Doc. #27-7 at 25. Thus, the Court considers the exhaustion argument as applying to all items in the complaint except the oils and pendant cord.

Title 42 of the United States Code, Section 1997e, governs actions brought by prison inmates. Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This subsection applies to all claims regarding prison life. See Porter v. Nussle, 534 U.S. 516, 532 (2002). Section 1997e requires

exhaustion of any available administrative remedies, regardless of whether they provide the relief that the inmate seeks. See Booth v. Churner, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. See Marcias v. Zenk, 495 F.3d 37, 43 (2d Cir. 2007). If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. See Woodford, 548 U.S. at 95.

Reverend Bruno has submitted evidence that Plaintiff exhausted his administrative remedies only with regard to his request for religious oils and a double-stranded pendant cord. Plaintiff has not submitted any copies of grievances regarding the other requested items. Accordingly, Reverend Bruno's motion for summary judgment is granted as to the claims for all other items for failure to exhaust administrative remedies.

B. Requests for Oils and Pendant Cord

Plaintiff seeks damages as well as injunctive relief on his claims for the denial of permission to purchase a pendant cord and oils. He contends that the denial of these items has violated his rights under the First Amendment and RLUIPA. He also asserts a federal law claim for denial of equal protection of the laws as well

as various state law claims.

1. First Amendment

The First Amendment guarantees the right to free exercise of religion. Prisoners do not relinquish this right when they are incarcerated. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) ("Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." (internal citations omitted)). A prisoner's First Amendment right to free exercise of religion, however, is not absolute. It "is subject to valid penological concerns, including those relating to institutional security." Johnson v. Guiffere, No. 9:04-CV-57, 2007 WL 3046703, at *4 (N.D.N.Y. Oct. 17, 2007). Thus, the courts must balance prisoners' religious rights against the state's interests in administering the prison system. See Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003).

The Second Circuit has not determined "whether, to state a claim under the First Amendment's Free Exercise Clause, a 'prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs.'" Holland v. Goord, 758 F.3d 215, 220 (2d Cir. 2014) (quoting Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006)). Plaintiff provides no evidence to show how his beliefs are burdened. He merely alleges in conclusory fashion that he is unable to practice his religion without the requested

items. Defendant, however, does not raise this issue. For purposes of this ruling, therefore, the Court will assume that Reverend Bruno's conduct substantially burdened Plaintiff's sincerely held religious beliefs.

After the prisoner demonstrates that his sincerely held religious beliefs have been burdened, the defendant must identify a legitimate penological interest to justify his conduct. Ford, 352 F.3d at 595. The court then considers four factors: (1) "whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective;" (2) "whether prisoners have alternative means of exercising the burdened right;" (3) "the impact on guards, inmates, and prison resources of accommodating the right;" and (4) "the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests." Salahuddin, 467 F.3d at 274 (citing Turner v. Safley, 482, U.S. 78, 90-91 (1987)).

The state substantially burdens a prisoner's religious beliefs "where the state put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996) (internal citation and quotation marks omitted). Although the burden is not particularly onerous, the prisoner must show more than mere inconvenience. See Pugh v. Goord, 571 F. Supp. 2d 477, 505 (S.D.N.Y. 2008).

Reverend Bruno argues that providing Plaintiff with the oils and cord will threaten institutional safety and security. He has provided evidence of various ways unapproved oils may be used to endanger safety and security. In addition, Reverend Bruno notes that other courts have upheld the denial of requests to purchase oils from outside vendors. See Taylor v. Bruno, No. CV07-4033535, 2008 WL 5481128, at *5-7 (Conn. Super. Ct. Nov. 25, 2008). Plaintiff has provided no contrary evidence or authority. Further, accommodating Plaintiff's wish for oils would place a severe burden on guards and prison resources. Staff would be required to constantly monitor the use of the oils to ensure they were not being used for an improper purpose, such as barter, masking the odor of contraband or creating incendiary weapons.

As Plaintiff has not responded to the motion for summary judgment, the record contains no evidence of the precise use of the oils in Plaintiff's religious practices. Thus, the Court cannot evaluate whether Plaintiff can otherwise exercise this particular right. Other than a bald statement, Plaintiff has provided no evidence showing why the use of the oils available in the commissary is not a reasonable accommodation of the request.

Reverend Bruno also raises the issue of favoritism. This issue is particularly applicable to Plaintiff's request to purchase a special pendant cord. Inmates of all religions are required to wear

their religious medallions on a ball-bar chain available for purchase in the commissary. Allowing Plaintiff to have a special cord would set him apart and appear to favor his religion over all others. This favoritism could lead to unrest among the inmates and threaten institutional security. See Decl. of Rev. Anthony J. Bruno, Doc. #29-8, at 9, ¶ 25.

Plaintiff has alternative means to exercise his beliefs including meeting with a spiritual advisor, reading written or listening to recorded materials, creating a small shrine in his cell, and using tarot cards. In light of the legitimate penological concerns and alternative means to practice his religion asserted by Reverend Bruno and Plaintiff's failure to offer any evidence or argument in response to the motion for summary judgment, the motion is granted as to the First Amendment claims.

2. RLUIPA

a. Money Damages

The Second Circuit has held that damages claims for violation of RLUIPA are not cognizable against state officials in either their official or individual capacity. Washington v. Gonyea, 731 F.3d 143, 145-46 (2d Cir. 2013). Accordingly, Reverend Bruno's motion for summary judgment is granted as to all claims for damages for violation of RLUIPA.

b. Injunctive Relief

Although RLUIPA affords similar protections to the Free Exercise Clause, the pleading standard under RLUIPA is heightened for both parties. "RLUIPA protects inmates by providing that a government shall not 'impose a substantial burden' on the 'religious exercise' of inmates in certain institutions unless the government shows that the burden furthers a compelling interest by the least restrictive means." Salahuddin, 467 F.3d at 273. If the prisoner shows that his religious exercise has been substantially burdened, then the state must show more than a rational relationship between the challenged practice and a government interest. See Graham v. Mahmood, No. 05 Civ. 10071(NRB), 2008 WL 1849167, at *13 (S.D.N.Y. Apr. 22, 2008). To establish a substantial burden, Plaintiff must show that Reverend Bruno's actions pressured him to commit an act forbidden by his religion or prevented him from performing actions mandated by his religion. See Muhammad v. City of New York Dep't of Corr., 904 F. Supp. 161, 188 (S.D.N.Y. 1995). As under the First Amendment analysis, the state's "interference must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine." Davidson v. Davis, No. 92 Civ. 4040(SWK), 1995 WL 60732, at *5 (S.D.N.Y. Feb. 14, 1995)(internal quotation marks and citation omitted).

RLUIPA was not intended to elevate accommodation of an inmate's religious practices over an institution's need to maintain safety and security. See Cutter v. Wilkinson, 544 U.S. 709, 722 (2005). Reverend Bruno argues that accommodating Plaintiff's requests would threaten institutional safety and security. In addition, allowing an exception to standard practices regarding oils and chains for religious medallions for Plaintiff would lead to a proliferation of requests for exceptions from other inmates. This would severely impact orderly prison administration.

In addition, Plaintiff has made no showing of the significance of these two items in his religious practice. Thus, he has not shown that the denial of additional oils and the pendant cord necessarily impose a significant burden on his religious exercise. Plaintiff's statement that these items are required is insufficient to meet his burden. See Gelford v. Frank, 310 F. App'x 887, 889 (7th Cir. 2008) (holding that prisoner's statement that items are required for religious practice is insufficient to demonstrate genuine issue of material fact regarding substantial burden on religious practice).

As Plaintiff has made no showing of how his religious exercise has been affected and that the burden on religious exercise is substantial, the burden of persuasion does not shift to Defendant to show that the official action furthers a compelling state interest and is the least restrictive means of furthering that interest. See

Miller v. Fischer, No. 9:07-CV-942, 2009 WL 7760224, at *9 (N.D.N.Y. Sept. 22, 2009). Reverend Bruno's motion for summary judgment is granted as to the RLUIPA claim.

3. Equal Protection

Plaintiff also asserts a claim under the Equal Protection Clause of the Fourteenth Amendment. The Equal Protection Clause protects prisoners from invidious discrimination. Rather than mandating identical treatment for each individual, it requires that similarly situated persons be treated the same. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985). To state an equal protection claim, a plaintiff must allege facts showing that he was treated differently from other similarly situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted). Plaintiff has not alleged facts demonstrating either requirement.

A plaintiff can also assert an equal protection claim on a "class of one" theory by alleging, first, that he has been intentionally treated differently from others similarly situated and, second, that there is no rational basis for the difference in treatment. Village

of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The plaintiff must allege an "extremely high" level of similarity with the person to whom he is comparing himself. Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). The plaintiff's circumstances and the other person's must be "prima facie identical." Id. at 105.

Plaintiff here has identified no other inmate who was treated differently under similar circumstances. Thus, he fails to state an equal protection class of one claim. See Page v. Lantz, No. 3:03cv1271(MRK), 2007 WL 1834519, at *6 (D. Conn. June 25, 2007) (holding that class of one equal protection claim fails as a matter of law where plaintiff did not allege that similarly situated inmates were treated differently under similar circumstances). In addition, Reverend Bruno has submitted evidence showing that other Wicca inmates requested similar items and were denied under the same standard applied to Plaintiff.

The Court concludes that Plaintiff has not provided evidence to support a claim for denial of equal protection of the laws. The motion for summary judgment is granted as to the federal equal protection claim.

C. State Law Claims

Finally, Plaintiff asserts claims under state law. Supplemental or pendant jurisdiction is a matter of discretion, not of right. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-16

(1966). Where all federal claims have been dismissed before a trial, pendant state claims should be dismissed without prejudice and left for resolution by the state courts. See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases). Because the Court has granted Reverend Bruno's motion for summary judgment on all of Plaintiff's federal law claims, it declines to exercise supplemental jurisdiction over the state law claims. Plaintiff may pursue those claims in state court.

IV. Conclusion

Reverend Bruno's motion for summary judgment [**Doc. #29**] is **GRANTED** as to all federal law claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's supplemental state law claims.

The Clerk is directed to enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

/s/__________________________
Janet Bond Arterton
United States District Judge

Dated at New Haven, Connecticut this 3rd day of December 2014.